## WILLIAMS *v.* STATE

[No. 341, September Term, 1961.]

330

*Decided July 10, 1962.*

*Motion for rehearing filed August 9, 1962, denied September 13, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*George H. Rosedom,* with whom were *Brown & Allen* and *Milton B. Allen* on the brief, for appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney,* and *Robert V. Lazzaro, Assistant State's Attorney,* on the brief, for appellee.

PER CURIAM.

The appellant, James E. Williams, was tried and convicted by the Criminal Court of Baltimore, sitting without a jury, of violation of the lottery laws. He contends that evidence gotten as a result of an unreasonable search and seizure was improperly admitted against him.

At about 10:30 a.m. on November 24, 1961, in "the vicinity of Whitelock and McCulloh Streets," three Baltimore policemen served on Williams a warrant for the search of

his person. A warrant for the search of the person was not known to the common law but the federal government, by statute and by rule, and various States, by statute, have provided for the issuance of such warrants. See 79 C.J.S. "Searches and Seizures" Sec. 64, p. 828; 18 U. S. C. A. "Rules of Criminal Procedure," Rule 41; and Annotation, 49 A.L.R. 2d 1209. In Maryland the Legislature, by Ch. 749 of the Laws of 1939 (now codified as Sec. 551 of Art. 27 of the 1961 Supplement to the Annotated Code), authorized the issuance of a warrant to search an individual identified or described with reasonable particularity. The statute has been held effective and applicable in a number of cases in this Court. See *Dow v. State,* 207 Md. 80, and cases therein cited.

Williams concedes that the warrant, which stated that there was probable cause to believe he was committing a misdemeanor by violating the lottery laws, validly authorized a search of his person. His claim of reversible error is that to take him to the police station to search him was unreasonable and vitiated the warrant and the search.

The policemen, after serving the warrant, called the cruising patrol wagon, which came almost immediately. Williams was frisked for weapons, placed in the wagon, and taken to the Northern Police Station, where he was disrobed to his shorts in the Sergeant's room. Lottery slips were found in his socks. The station was some two miles from where the police accosted Williams, and the time elapsing from the initial contact until the discovery of the lottery slips was approximately forty minutes. At trial, Williams' counsel moved to exclude the slips from evidence, but his motion was denied.

The State maintains that the search was lawful and reasonable—that under the circumstances it would indeed have been unreasonable to have searched the appellant for lottery slips at any other place or in any other way. The appellant does not spell out what the police should have done, but he strenuously objects to their having taken him to the police station and there searching him.

The warrant not only authorized the search of Williams but directed that he and all evidence and paraphernalia used

in or incident to criminal activities be brought before a magistrate of the State. It was late autumn and the nature of the evidence suspected of being on Williams' person permitted it to be easily hidden in his inner clothing. It would neither have been conducive to Williams' health nor to the public decency to disrobe him on the City streets. It would have been at least highly inappropriate, if not impracticable, to disrobe him in the wagon. Under these circumstances, we think his removal to the nearby station house for the purpose of executing the warrant was not unreasonable and the search was lawful.

*Judgment affirmed, with costs.*