[No. 2457–2. Division Two. November 28, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES B. ROOD, *Appellant.*

*Stephen L. Wanderer,* for appellant.
*Kenneth L. Cowsert,* for respondent.

PEARSON, C.J.—This appeal challenges on constitutional grounds the search and seizure of amphetamines from a residence in Longview, Washington, which led to defendant's conviction for possession of a controlled substance.

The amphetamines were found by police in a hole in the foundation of a residence located at 262 27th Avenue in Longview, Washington. The search and seizure was made pursuant to a warrant issued by a Cowlitz County district judge. It is conceded that the affidavit supporting issuance of the warrant was constitutionally sufficient. However, the affidavit established probable cause to search a residence at *"260 27th Avenue,"* rather than 262 27th Avenue, and contained no other description of the premises to be searched.

The affidavit,[1] which was not served with the warrant, stated that an informant had purchased amphetamine tablets from a "Crazy Jim," who resided at 260 27th Avenue in Longview, Washington. The affidavit also referred to another informant who had talked to a third person who

---

[1]The affidavit stated in part:
"We, Dallas Reel and Daryl Tangen, first being duly sworn on oath, depose and say: That we are Deputy Sheriffs for the County of Cowlitz, Washington.

claimed to have purchased amphetamines from a Crazy Jim, living "in the 200 block of 27th Avenue."

In attempting to execute the warrant at 1 a.m. on January 28, 1976, Sheriff's Deputy Tangen discovered that 260 27th Avenue did not exist, but he did find residences numbered 258 and 262. Although he had not observed the house previously, Tangen surmised that the informant had misread 262 as 260 because an accumulation of dirt, running paint, and corrosion around the house number caused the last digit to look like a "0," rather than a "2." It was only after the officer examined the number at close range that he realized the last digit was a "2."

Tangen then called Judge Ronald Huntington, the district judge who had issued the original warrant, explained the address error as well as the explanation for the error,

"That on January 27, 1976, we received information from a reliable confidential informant who stated that the informant had purchased a quantity of amphetamine tablets from a subject known only as Crazy Jim who resides at 260 27th Ave., Longview, Washington. Informant further stated that while in the residence at 260 27th, Longview, Washington, the informant had observed additional quantities of amphetamine tablets. Informant says that both the purchase and the observation of amphetamines in the residence took place within the last 48 hours.

"That we have received information from a second reliable informant who stated that the informant had observed amphetamine tablets in the possession of a third party within the last 24 hours. That the person who had possession of the amphetamines stated to the informant that the amphetamines had been purchased from a subject known only as Crazy Jim who resides in the 200 block of 27th Ave., Longview, Washington.

"That these officers have obtained a sample of the substance which is being sold at the residence of 260 27th Ave., Longview, Washington, and that the substance field tested positive as amphetamines.

"That the informants in this matter have given information to these officers in the past which information has always proven reliable and correct and that the second informant has furnished information resulting in the arrest and conviction of numerous subjects in this area.

"That these officers feel that probable cause exists to believe that a controlled substance, to–wit: amphetamines, is being kept, used, and otherwise being disposed of at the residence at 260 27th Ave., Longview, Washington, which is a dwelling located at 260 27th Ave., Longview, Washington.

"WHEREFORE, affiant prays that a search warrant be issued, directed to any peace officer of Cowlitz County, commanding him to search the residence described and seize the items listed along with the containers in which they are kept and bring such items when found before the Magistrate issuing this search warrant."

and obtained the judge's permission to make the appropriate correction on the warrant. The call was not recorded, nor was Tangen's telephone testimony sworn. Furthermore, Judge Huntington was not certain whether he had assented to amending the warrant to read 262 or whether he gave his general approval to whatever change Tangen thought appropriate.

Before the warrant was served, Tangen, who also knew Crazy Jim by sight but not as James Rood, recognized a vehicle parked at the curb in front of 262 27th Avenue as one he had previously seen Crazy Jim driving.[2] At this point another officer who came to assist with the search and who was acquainted with defendant, advised Officer Tangen that the Crazy Jim referred to in the warrant was James Rood.

Also, before serving the warrant, Tangen knocked on the door of 262 27th Avenue, identified himself, and inquired of the occupant whether he was Crazy Jim. When Tangen received an affirmative reply, he served the warrant. A subsequent search disclosed the amphetamines.

Defendant's motion to suppress the evidence was denied. The first issue is whether a search warrant which describes the premises to be searched by address only is valid if the address is incorrect.

The fourth amendment to the United States Constitution requires that "[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing the place* to be searched . . ." (Italics ours.)

The constitutional standard to be applied in examining the sufficiency of a warrant's identification of the place to be searched was authoritatively expressed in *Steele v. United States,* 267 U.S. 498, 503, 69 L. Ed. 757, 760, 45 S. Ct. 414, 416 (1925): "It is enough if the description is

---

[2] None of this information was available at the time of Officer Tangen's telephone call to Judge Huntington.

such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended."

 Cases applying this standard to situations where the warrant contains a wrong address decline to give primary emphasis to the technical accuracy of the address, if the premises to be searched are "otherwise sufficiently identified so as to enable officers to locate them with certainty . . ." (*State v. Trasvina,* 16 Wn. App. 519, 522, 557 P.2d 368 (1976)), "and whether there is any reasonable probability that another premises might be mistakenly searched . . ." *United States v. Darensbourg,* 520 F.2d 985, 987 (5th Cir. 1975); *State v. Davis,* 165 Wash. 652, 5 P.2d 1035 (1931).[3] This latter requirement of avoiding a mistaken search reaches the heart of the Fourth Amendment and must be the focus of any analysis of a "wrong address" case.

We perceive the general rule to be that where the warrant and affidavit describe the premises to be searched by an address which proves to be incorrect, and where there is no other description or information available that would permit the officers by the exercise of reasonable effort to ascertain the intended premises with certainty, then the search warrant lacks the particularity required by the constitution. *See State v. Yoder,* 96 Idaho 651, 534 P.2d 771 (1975); *People v. Royse,* 173 Colo. 254, 477 P.2d 380 (1970). *See generally* Annot., 11 A.L.R.3d 1330 (1967).

Our review of the authorities also discloses three general sources of information that may be considered in determining whether the premises to be searched are sufficiently identified, absent a correct street address, to enable the officers to locate them with certainty. Those are: (1) other physical descriptions of the premises contained in the warrant or affidavit, *State v. Trasvina, supra;* (2) information concerning the location of the premises based upon the officer's personal knowledge of the location of the premises

---

[3]*But see State v. Yoder,* 96 Idaho 651, 534 P.2d 771 (1975); *People v. Royse,* 173 Colo. 254, 477 P.2d 380 (1970); *United States v. Constantino,* 201 F. Supp. 160 (W.D. Pa. 1962); *United States v. Sands,* 14 F.2d 670 (W.D. Wash. 1926).

or its occupants, *State v. Davis, supra; State v. Andrich,* 135 Wash. 609, 238 P. 638 (1925); and (3) the personal observations of the officer or officers at the time the warrant is executed. This latter source is recognized in *Steele v. United States, supra,* with its pronouncement that the description suffices if the officer can "with reasonable effort" ascertain and identify the place intended.

Applying these general principles and sources to the case at bench, we conclude that the warrant was constitutionally sufficient, even though the address was incorrect. The error in the informant's description was due to weathering conditions, which on close inspection disclosed that the subject premises address was "262," rather than "260."[4] When the mistake was discovered, and when no other premises existed with a "260" number, it was reasonable for the officers to conclude that the place intended to be searched was, in fact, 262 27th Avenue. Thus the personal observation of the officers executing the warrant formed a reasonable basis for locating the premises intended to be searched, despite the incorrect address.

But we need not rely solely on the officer's personal observations in determining the reasonableness of the decision to search 262 27th Avenue. The person described in the affidavit as Crazy Jim was known to one of the officers, and another officer recognized—parked in front of the house—a vehicle which he had seen Crazy Jim driving previously. This prior information, which was within the personal knowledge of the officers, served to confirm their conclusion that 262 27th Avenue was the intended premises. Finally, before serving the warrant and searching the premises, the officers ascertained that Crazy Jim, whose true name was James Rood, in fact occupied 262 27th Avenue. With this cumulative information, none of which was disputed at the suppression hearing, we conclude there was

---

[4]Officer Tangen drew a freehand picture of the appearance of the house number, which was admitted at trial. This drawing demonstrated persuasively the explanation for the mistake which was made in the warrant.

no reasonable likelihood that a mistaken search would take place.[5]

It follows from this analysis that the premises to be searched were sufficiently identified in the original warrant, and we need not consider defendant's second contention that Officer Tangen's commendable attempt to obtain Judge Huntington's approval to amend the warrant violated the requirements of CrR 2.3 or JCrR 2.10. *State v. Trasvina, supra.*

Defendant's last contention is that there was insufficient evidence of constructive possession of the amphetamines because they were found in a cup under the house where defendant had resided for 2 months. We disagree.

The parties stipulated the following evidence on the merits:

Subject to our objection to the admissibility of any evidence because of our motion to suppress, we would stipulate to the following facts: Amphetamines were found outside of the house in a hole in the foundation; the lab test confirmed these were, in fact, amphetamines. James Rood and Gail Arhens . . . had been living in the house for approximately two months at the time that the officers discovered the amphetamines there. The house is located in Longview, Cowlitz County, Washington.

█ The parties also agreed to stipulate as to the "testimony" received at the suppression hearing. This stipulation afforded a sufficient basis for finding that defendant was in dominion and control of the premises where the controlled substances were found. By virtue of such dominion and control, defendant was in constructive possession of the drugs, even though there was no evidence that he had actual knowledge of the presence of the drugs. *State v. Perry,* 10 Wn. App. 159, 516 P.2d 1104 (1973); *see State v. Laursen,* 14 Wn. App. 692, 544 P.2d 127 (1975); *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968).

---

[5]We note that the burden of proof was on the defendants to show that the house searched reasonably could have been confused with another house. *State v. Trasvina,* 16 Wn. App. 519, 522, 557 P.2d 368 (1976). No such evidence was offered.

Judgment affirmed.

PETRIE and REED, JJ., concur.